**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **V.** | : | **DOCKET NO. 23-CR-00085-01** |
| | : | |
| **RONALD ANDRULONIS** | : | |

### *DEFENDANT'S, RONALD ANDRULONIS, SENTENCING MEMORANDUM*

On 8 September 2023, Andrulonis appeared before the Honorable Beryl A. Howell and entered a guilty plea to Count 1 of the Indictment admitting to Entering and Remaining in a Restricted Building in violation of 18 U.S.C. Section 1752(a)(1) and (b)(2). Sentencing was deferred pending the completion of a Presentence Report. The current sentencing date is 15 December 2023.

**Factual Basis of Guilty Plea**

The Court is well aware of the events of 6 January 2021. This factual basis is specific to the actions of Andrulonis on that date.

Andrulonis was an employee for Amtrak at the time of the events. When he learned of the rally in Washington D.C., Andrulonis advised his superiors at Amtrak that he was taking off from work on 6 January 2021. He desired to attend the rally. His supervisor has verified the excused absence. Andrulonis traveled to Washington D.C. on Amtrak. Andrulonis attended the rally. As the rally participants moved toward the Capital complex and building, Andrulonis followed the crowd. At some point, the police lines were breached, and hundreds of persons entered the Capital Building. It is estimated that the breach of the building itself occurred shortly after 2:00 p.m. Andrulonis followed a large number of persons into the building approximately twenty-five (25)

minutes after the building was breached.  Andrulonis did not participate in any adverse physical or verbal actions directed toward law enforcement officials outside the building.  Andrulonis did not engage in the use of force to enter the building because it had been breached twenty-five (25) minutes prior to him entering.  Andrulonis did not observe how the building was breached because the Defendant was too far back in the crowd of thousands to see when and how it occurred.

Andrulonis entered the building through a large broken window.  He walked around in the building taking pictures of the actions of the other participants and the building.  Andrulonis was not part of any group.  Andrulonis did not associate with any other persons while in the building. He followed the crowd into the building and into some restricted areas.  He did not cause any destruction.  He did not confront any law enforcement officials.  He did not take anything out of the building.  He remained in the building for eleven (11) minutes and left.

Eight (8) minutes after leaving the building, he re-entered through the Rotunda doors,  At one point, he was in the same physical location as other persons yelling various political comments and insults, Andrulonis did not join in the chants as demonstrated in the videos.  When rioters in front of the Defendant began to push against a law enforcement official, tear gas was deployed. Andrulonis left.  The videos establish Andrulonis did not assist the crowd in pushing against any law enforcement officials and did not push any himself.

Andrulonis did not pre-plan any entry into the building that day.  He did not have implements to force entry.  He was not armed although he owned, and was licensed to carry, firearms.  He did not attempt to conceal his identity.  He was not a leader, organizer or member of any group at the time he entered the building.

Andrulonis took Amtrak home the same day.

**Presentence Report**

Neither counsel nor Andrulonis have objections to the Presentence Report, including the Sentencing Guideline calculation.

**Sentencing Guideline Range**

The Presentence Report lists the total offense level as four (4). Andrulonis has no criminal history points placing him in Criminal History Category I. The guideline range is zero (0) to six (6) months of incarceration.

**_Sentencing Factors_**

After consideration of the sentencing guideline range, the Court must consider the sentencing factors set forth in 18 U.S.C. Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and, (7) the need to provide restitution to any victims of the offense. 18 U.S.C.A. Section 3553(a).

**_Nature and Circumstances of the Offense and the History and Characteristics of the Defendant_**

**Illegal Conduct**

Andrulonis adopts the factual basis and scope of the conduct set forth at the time of the entry of the guilty plea.

**The Defendant**

Andrulonis presents as an articulate, hard-working man who is devoted to his family and friends.  He was raised in a very rough neighborhood in Philadelphia, which area has further devolved into a den of heroin/fentanyl addicts and homeless.  His family guided him along a different path than walked by so many of his peers.  Rather than "run the streets', Andrulonis attended school and played organized sports throughout his youth.

Andrulonis is in outstanding relationship with a woman whom he adores and vice versa. In October, the couple was blessed with the birth of their first child, Oliver James Andrulonis. Oliver is already of paramount importance in family life.  Andrulonis does not desire to miss any moments with his child who was not conceived at the time of the January 6th events.

The Court has reviewed Andrulonis's work history.  His employment history is exemplary. The lack of his college education has never been an impediment to a successful working career. He has succeeded at every job at which he worked.  He has earned excellent compensation due to his efforts on the jobsite as a worker and as a person.   Unfortunately, this has come to an end, at least for the moment, due to his actions in this case.  He was terminated by Amtrak for his actions. With the uncertainty of the sentence which the Court will impose, coupled with a now transparent criminal history, employment which will support his family is much more difficult to locate and far from certain.

Although Andrulonis's actions on January 6th are the antithesis of endorsing love of country, he truly believes in the United States of America.  He served in the United States Army as an enlisted soldier for four (4) years, receiving an honorable discharge.  Ater his discharge, he worked for a military contractor.  He was deployed to Iraq for his assignment for many months. A few years later, he worked for another defense contractor.  He was assigned to Afghanistan for

many months.  Andrulonis has, by his actions, verified his sense of duty and honor to serve his country in geographic locations where he easily could have been crippled or killed.

The strains of employment in war zones have handicapped him mentally.  Andrulonis is a proud, strong man raised in the tradition that a male is not supposed to express too much emotion or demonstrate weakness.  However, he sought treatment through the Veteran's Administration beginning in 2016 to assist him addressing his diagnosed Post Traumatic Stress Disorder.  He knows he requires counseling from time to time to help him through mental health struggles.

At this moment, Andrulonis seeks the opportunity to work, continue his mental health counseling, and, most importantly, to be a fantastic partner and father.

**Acceptance of Responsibility**

Andrulonis has been fully contrite about his participation in the actions to which he entered his guilty plea.  He sought to plead guilty since the outset of the case.  There are no more steps available to him to express his contrition other than to prove it through his future, law-abiding conduct.

**Need for the Sentence to Reflect the Severity of the Offense and to Provide Just Punishment**

There are innumerable quotes, comments and opinions express by Judges, prosecutors, defense attorneys, politicians, members of  the public, etc… about the January 6th events.  No words truly capture the magnitude of the event.  The illegal, brazen actions of countless American citizens cast doubt upon the validity of our democracy nationally and internationally.  The event is one of the greatest travesties in our history.  We appeared no better than those countries in which democracies or despots are toppled by rabbles or juntas on a regular basis.  We strive to be the pinnacle of governance.  Those who participated in the events, in the name of freedom and democracy, only hurt our country.

What is a just sentence for a thirty-eight (38) year old, hard-working, loving man with a two (2) months old child coupled with no prior record who has pled guilty of a single count of a misdemeanor offense?  A just answer to the question, given all of the sentencing factors, is probation or a term of house arrest when the court assesses all of the sentencing factors.

### The Need to Deter Future Criminal Conduct of this Type Generally and to Protect the Public from the Commission of Future Crimes by the Defendant

Little reason exists that the sentence imposed must be harsh to prove a deterrent to Andrulonis as a reason not engage in future criminal conduct.  He has admitted guilt.  He has lost his job.  He is saddled with a criminal record which greatly complicates lucrative employment to support his growing family.  He has lost friends who differ from him politically.  It is far more likely that Andrulonis will continue full steam ahead with performing the tasks necessary to live a law-abiding life than to engage in criminal conduct.  His history is the best indicator that he is an extremely low risk of engaging in criminal activity moving forward.

### Need to Provide the Defendant with Educational and Vocational Training, Medical Care or Other Correctional Treatment

Andrulonis does not have a need for educational or vocational training.  Andrulonis is not currently in need of medical/mental health care which he does not already receive.

### Guidelines and Policy Statements

There are no particular guidelines or police statements which are pertinent.

### Need to Avoid Sentencing Disparities

There are many Defendants who have been indicted in relation to the January 6th events. Abundant examples exist of probationary or house arrest sentences in circumstances such as these. The Court has handled many January 6th cases.  Andrulonis places faith in the Court's ability to discern each individual situation from the larger mass.

## **Restitution**

Andrulonis agrees to pay restitution as meted out by the Court.

## **Financial Information**

None.

## **Additional Factor**

As part of the plea agreement, the Government sought Andrulonis' assistance in a matter related to January 6th. Andrulonis provided full, complete and truthful answers to those questions from law enforcement officials.

Respectfully Submitted,

_____

Thomas C. Egan III, Esquire

### ***CERTIFICATE OF SERVICE***

I, Thomas C. Egan III, Esquire, hereby certify that I caused this Sentencing Memorandum

to be served upon the following persons and/or entities vie ECF:


Clerk
United States District Court
United States District Court
District of Columbia
333 Constitution Avenue
Washington, D.C. 20001

Honorable Beryl A. Howell
United States District Court
District of Columbia
333 Constitution Avenue
Washington, D.C. 20001

Rebekah Lederer, Esquire
United States Attorney's Office
601 D. Street NW
Washington, D.C. 20001



Date:   12/01/23

_____
/s/      Thomas C. Egan III, Esquire